# hereIn the United States Court of Appeals for the Seventh Circuit

No. 25-2249

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

*v.*

MICHAEL J. MADIGAN,
*Defendant-Appellant*

*On Appeal from the United States District Court for the Northern District of Illinois*
*No. 1:22-cr-115 (Hon. Robert J. Blakey)*

**REPLY IN SUPPORT OF MOTION FOR STAY OF OCTOBER 13, 2025, SURRENDER DATE AND FOR RELEASE PENDING APPEAL**

DANIEL J. COLLINS
KATTEN MUCHIN ROSENMAN LLP
  *525 West Monroe Street*
  *Chicago, Illinois 60661*
  *(312) 902-5434*
  *Daniel.Collins@Katten.com*

LISA S. BLATT
DAVID M. ZINN
AMY MASON SAHARIA
  *Counsel of Record*
PATRICK J. LOOBY
ALLISON S. EISEN
KAITLIN D. WETZ
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *asaharia@wc.com*

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................2

I.     The "Stream of Benefits" Instruction Presents a Substantial Question. ..............................................................................................2

II.    The Instructions on the "Corruptly" Requirement Present Substantial Questions. ...........................................................................5

III.   The Travel Act Instructions Present Substantial Questions ....................8

IV.   The Court's Response to the Jury Note on Bona Fide Wages Presents a Substantial Question. ................................................................8

V.    The Sufficiency of the Evidence Presents Substantial Questions ...........9

     A.    ComEd Counts .................................................................................9

     B.    State Board Counts........................................................................10

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

Page

## CASES

*Gerhartz v. Richert*, 779 F.3d 682 (7th Cir. 2015) ..................................................3

*McDonnell v. United States*, 579 U.S. 550 (2016) ..................................1, 4, 5, 13

*Ryan v. United States*, 688 F.3d 845 (7th Cir. 2012) ............................................4

*United States v. Autori*, 212 F.3d 105 (2d Cir. 2000)..........................................11

*United States v. Collins*, 966 F.2d 1214 (7th Cir. 1992) .................................3, 4

*United States v. Eaken*, 995 F.2d 740 (7th Cir. 1993)..........................................2

*United States v. Ford*, 435 F.3d 204 (2d Cir. 2006)..........................................7, 8

*United States v. Jones*, 993 F.3d 519 (7th Cir. 2021) ...........................................6

*United States v. Mangano*, 128 F.4th 442 (2d Cir. 2025)....................................4

*United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019) ...............................6

*United States v. Shen Zhen New World I, LLC*,
   115 F.4th 1167 (9th Cir. 2024) .............................................................................8

*United States v. Silver*, 948 F.3d 538 (2d Cir. 2020)................................1, 4, 5, 8

*United States v. Sittenfeld* (6th Cir. 2025) (No. 23-3840)...................................9

*United States v. Snyder*, 2024 WL 4834037 (7th Cir. Nov. 20, 2024) ....1, 5, 6, 7

*United States v. Solomon*, 892 F.3d 273 (7th Cir. 2018) ....................................4

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016).....................................9

*United States v. Williams*, 504 U.S. 36 (1992) ....................................................3

## STATUTE

18 U.S.C. § 666 ........................................................................................*passim*

# INTRODUCTION

The government's opposition confirms the substantiality of the questions presented by Madigan's appeal. The government acknowledges that affirmance would create multiple circuit splits—with the Second Circuit on the definition of the "corruptly" element of 18 U.S.C. § 666, and with the Ninth Circuit on the scope of the Travel Act. And it effectively concedes other substantial questions by not addressing them. The government does not dispute that the district court disregarded this Court's decision on remand in *Snyder*, which recognized that § 666 requires consciousness of wrongdoing. And it does not dispute that the Second Circuit in *Silver* correctly articulated the stream-of-benefits theory after *McDonnell*.

The government tellingly seeks to dodge the merits by advancing waiver arguments it never made below. The issues that Madigan presents in this motion were raised in Madigan's post-trial and release motions in the district court, and the district court resolved those arguments on the merits. The government's waiver arguments (at 11, 14, 21) uniformly fail.

The government also seeks to avoid scrutiny of the problematic instructions on the ComEd counts by claiming (at 20-22) that the wire-fraud counts related to the state board scheme support the sentence on their own.

1

But its sufficiency arguments on the state board counts heap speculation upon speculation. Because Madigan never made a recommendation, and never made any statement to Governor Pritzker's office, the government can only speculate about the false statement or official act elements of the wire-fraud counts.

Because Madigan preserved all the substantial questions he will raise on appeal, and because this Court conducts "independent" de novo review of all legal errors (including sufficiency of the evidence), *United States v. Eaken*, 995 F.2d 740, 741 (7th Cir. 1993), this Court should grant Madigan's motion.[1]

## ARGUMENT

### I. The "Stream of Benefits" Instruction Presents a Substantial Question.

a. The government argues, for the first time, that Madigan waived his argument with respect to the stream-of-benefits instruction. The government did not argue waiver below in response to the identical argument in Madigan's post-trial motion for new trial and release motion. *See* R.408 at 80-84; R.460 at 8. Nor did the district court find that Madigan waived this argument in its

---

[1] The government does not defend the district court's alternative—and obviously incorrect—ruling denying release based on a purported page-limitation violation.

2

decisions on those motions. The issue is properly before the Court because the district court passed on the validity of the instruction in denying Madigan's motion for a new trial. R.450 at 58-63; *see United States v. Williams*, 504 U.S. 36, 41-42 (1992) ("It suffices for our purposes that the court below passed on the issue presented." (quotation omitted)); *Gerhartz v. Richert*, 779 F.3d 682, 686 (7th Cir. 2015).

The record refutes the waiver argument in any event. The district court *sua sponte* added the challenged stream-of-benefits instruction after the charge conference. *See* R.313 at 68. It did not base the instruction on this Court's patterns. Before then, the parties' proposed instructions had not used the term "stream of benefits." *See* R.183; R.261. Madigan promptly objected to the court's proposal, noting that the instruction improperly "lessen[ed] the government's burden," R.314 at 4. Madigan referred back to his pre-trial arguments, *id.*, in which Madigan objected that "[t]he vague allegation that Madigan knew 'benefits were intended to secure favorable treatment for ComEd legislation' is insufficient to proceed, even under a stream of benefits theory," *e.g.*, R.79 at 10; R.55 at 44. Madigan then renewed his objection in his post-trial motion for a new trial. R.401 at 53-54. Neither the government nor the court claimed waiver.

3

That Madigan objected to the instruction—as opposed to proposing an alternative—does not matter. *United States v. Collins*, 966 F.2d 1214 (7th Cir. 1992), cited by the government, applied plain error because the defendant "failed to object to the wording of the instructions" at all. *Id.* at 1222-23. The same was true in *United States v. Mangano*, 128 F.4th 442, 474-75 (2d Cir. 2025).

b. On the merits, the government does not dispute the correctness of *Silver*'s holding that, to prove a "stream of benefits" theory of bribery under *McDonnell*, the government must show that, at the time Madigan allegedly accepted a "bribe," he understood the "particular question or matter to be influenced." *United States v. Silver*, 948 F.3d 538, 568 (2d Cir. 2020). Nor does it dispute that the court's stream-of-benefits instruction did not include that requirement. This alone establishes a substantial question.

The government claims (at 13) that Madigan ignores "binding" Seventh Circuit precedent, but neither case it cites addresses this issue. *Ryan v. United States*, 688 F.3d 845 (7th Cir. 2012), pre-dates *McDonnell*. In *United States v. Solomon*, 892 F.3d 273 (7th Cir. 2018), this Court recognized the general validity of a "stream of benefits" bribery theory in a sentencing appeal

4

but did not address *McDonnell*'s impact or otherwise address the question this appeal presents. *See id.* at 275.

The government parrots (at 13) the district court's conclusion that other instructions cured that deficiency, but it fails to engage with Madigan's arguments on this point. *See* Release Mot. 10-12. For example, the district court's definition of "official act" did not convey *McDonnell*'s timing requirement as set forth in *Silver*. *Contra* U.S. Opp. 15-16. The court's definition said only that an "official action" is a "specific decision or action" on a "specific question or matter," R.313 at 55, but did not foreclose the possibility that the "question" or "matter" could be determined later. The faulty stream-of-benefits instruction encouraged the jury to reach that erroneous conclusion.

## II. The Instructions on the "Corruptly" Requirement Present Substantial Questions.

As explained in the opening motion, the district court's instruction on § 666's "corruptly" requirement was flawed in two respects—(a) it did not convey the offense's consciousness of wrongdoing requirement and (b) wrongly focused on the intent of the bribe-giver (not the recipient).

a. On the first issue, the government does not dispute that this Court on remand in *Snyder* recognized that federal-program bribery requires consciousness of wrongdoing. *United States v. Snyder*, 2024 WL 4834037, at

\*2 (7th Cir. Nov. 20, 2024). The conflict between the instructions below and this Court's decision on remand in *Snyder* establishes another substantial question because the instructions did not convey that concept.

In seeking to avoid that conclusion, the government (at 14) erects another meritless "waiver" argument. The government's argument is an exercise in semantic nit-picking. At the charge conference, the parties agreed that "corruptly" should be defined to include consciousness of wrongdoing but disagreed over how to capture that concept. Madigan requested an instruction that "corruptly" requires that a defendant understand that his actions were unlawful, *see* R.176 at 71, 137, and the government asked the court to add "or wrongful," R.384 at 8085-86. Madigan will argue on appeal that his instruction was correct, *see United States v. Ng Lap Seng*, 934 F.3d 110, 142 (2d Cir. 2019) (defining "corruptly" in a § 666 case as acting with "bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means" (citation omitted)), even if in some instances courts have phrased that concept using the term "wrongful," *see, e.g.*, *United States v. Jones*, 993 F.3d 519, 531 (7th Cir. 2021) (finding evidence sufficient for "corruptly" element where it showed defendant "knew what she was doing was wrong").

Rather than resolve the parties' dispute, the district court threw out the "consciousness of wrongdoing" concept altogether, and in doing so misread this Court's decision on remand in *Snyder*. R.384 at 8104; R.450 at 43.[2] The government does not defend that ruling other than to argue (at 15) that it was harmless because the jury supposedly found a quid pro quo that was inherently wrongful. But the alleged quid pro quo here—which did not involve Madigan receiving even a penny from ComEd—is not obviously illegal, making the "corruptly" instruction all the more critical. And, in any event, as explained herein and in the opening motion, the court's instructions on "stream of benefits" and "corruptly" failed properly to define a quid pro quo for the ComEd § 666 counts.

b. On the second issue, the government acknowledges (at 16) that affirmance in this case would create a circuit split with *United States v. Ford*, 435 F.3d 204 (2d Cir. 2006). That fact in and of itself demonstrates a substantial question. In arguing why *Ford* was incorrectly decided (at 16), the government continues to invoke cases arising under statutes other than § 666,

---

[2] The government mentions a later proposal by Madigan (*see* R.317 at 9) to support its incorrect waiver argument but fails to mention that Madigan made that back-up request only *after* the district court rejected Madigan's initial instruction. *See* R.314 at 4, 67.

7

including *Silver*. As Madigan argued in his motion (at 16-17), and the Second Circuit held in *Ford*, it is error to rely on cases involving statutes lacking § 666's intent element to interpret "corruptly." *See Ford*, 435 F.3d at 210 n.2 ("Section 201 lacks an explicit intent requirement as to recipients of alleged bribes while Section 666 contains one."). The government offers no response.

### III. The Travel Act Instructions Present Substantial Questions.

As explained in the opening motion (at 17-19), the Travel Act instructions erroneously (1) relied on Illinois statutes that cannot be Travel Act predicates because they did not require a quid pro quo and (2) for Counts 12 and 14, permitted conviction without proof that an interstate facility was used to transmit a communication *in interstate commerce*. The government does not address issue (2). And it does not contest that the Ninth Circuit has resolved issue (1) in Madigan's favor, demonstrating that the issue is close and that affirming Madigan's convictions would create a circuit split. *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1184 (9th Cir. 2024).

### IV. The Court's Response to the Jury Note on Bona Fide Wages Presents a Substantial Question.

The response to the jury note on "bona fide" wages presents a substantial question. Release Mot. 19-20. The government's response (at 18-

19) does not grapple with the fact that district court effectively read § 666(c)'s safe harbor out of the statute.

## V. The Sufficiency of the Evidence Presents Substantial Questions.

### A. ComEd Counts

The government's opposition evades Madigan's primary argument on the ComEd counts—*i.e.*, that the evidence did not show an agreement on a concrete question or matter.[3] *See* Release Mot. 20-22. The government still cannot define the question or matter supposedly subject to the agreement. Its response (at 19) instead rehashes its view of the alleged "this" side of what it calls a "this-for-that exchange" (the ComEd contracts) without elaborating on the "that." Even if the evidence "proved that Madigan was involved in the subcontractor arrangement from the start," U.S. Opp. 20, the government still cannot identify any agreement to exchange subcontractor hirings for official action on a specific question or matter. Its decision to try these counts on a murky stream-of-benefits theory presents a substantial question on the sufficiency of the evidence.

---

[3] The government's arguments also start from the faulty premise that sufficiency challenges never succeed or justify release pending appeal. Both are inaccurate. *See, e.g.*, *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) (reversing on sufficiency grounds); *United States v. Sittenfeld* (6th Cir. 2025) (No. 23-3840), R.65 (granting release pending appeal).

9

### B. State Board Counts

The government argues (at 22) that release should be denied because "there is no possible basis to invalidate" the convictions on Counts 8, 9, and 10 (the wire-fraud counts related to the state board scheme). But its response to Madigan's arguments (all of which are preserved) rests on irrelevant evidence and speculative guesses about what Madigan *might* have done.

*First*, in defending the existence of a quid pro quo, the government conspicuously focuses its arguments (at 21) on evidence related to counts on which the jury acquitted or hung. When the government defends the counts of conviction by urging the court to look at different counts, that's a good sign that something is amiss. In any event, the cited evidence does not prove a quid pro quo. Solis's reference to a quid pro quo concerned Solis's efforts to tie his zoning approvals as alderman (*i.e.*, his own official acts) to his ability to set up meetings with developers. R.471-3 at 41. Madigan expressly admonished Solis that he "shouldn't be talking like that." R.471-3 at 62.

The only evidence the government cites that bears on these counts are the recorded conversations between Madigan and Solis, from which it draws strained, unreasonable inferences. The government tellingly ignores Madigan's explicit refusal to link the recommendation with business referrals.

10

*See* Release Mot. 8 (citing R.471-3 at 457). No reasonable jury could infer a quid pro quo from these calls.

*Second*, the government does not dispute that it needed to prove a false statement. And it does not dispute that Madigan did not make a false statement. Rather, the government makes clear (at 21) that the sufficiency of the evidence hinges on its speculation that Madigan contemplated making some false statement at some future date. That is insufficient to prove a scheme to defraud. *See United States v. Autori*, 212 F.3d 105, 120 (2d Cir. 2000) (vacating wire fraud conviction where the government failed to prove what defendant said, or did not say, at meeting because without it, there was no proof of a scheme to defraud).

The evidence of falsity was nonexistent. What was it that Madigan would have said that was false? The government did not clearly answer this question below, but it ventures a new theory (at 20) before this Court: Madigan purportedly planned to falsify Solis's credentials when he made the recommendation. The government does not cite the record for this claim because there was *no evidence* that Madigan and Solis ever discussed lying about Solis's credentials. Nor was there any evidence that Solis—an alderman for over twenty years who had served on seven different City committees on

the Mayor's recommendation—was unqualified for a state board position. R.361 at 4755. To the contrary, Madigan's request for Solis's resume shows that he intended to present Solis's credentials accurately. R.387 at 8803.

*Finally*, whether the government proved that Madigan's recommendation could have influenced an "official act" likewise presents a substantial question. Contrary to the government's claim (at 21), Madigan did not "waive" this argument. He argued in his post-trial motion for judgment of acquittal that he "did not control who was appointed to state boards," "was in no position to offer a state board position," and had been "unsuccessful in advancing [hundreds] of recommendations." R.401 at 33 n.6; *see also* R.451 at 18 (release motion).

Preservation aside, the government's proof was entirely lacking. Madigan had no right to appoint individuals to the state board. The government cites Madigan's statement to Solis that he got another individual appointed (at 22), but that statement related to a different governor—not the newly elected Governor Pritzker. R.471-3 at 452-54. That Madigan planned to tell Governor Pritzker "[H]ere it is, this is what *we* want to do" shows only what *Madigan* wanted—not what he thought he could achieve by advising or

pressuring Pritzker. The government adduced no proof that the contemplated (but never conveyed) recommendation would remotely satisfy *McDonnell*.

## CONCLUSION

Madigan respectfully requests that this Court grant release pending appeal and stay his surrender date pending resolution of the motion.

Dated: September 23, 2025

Respectfully submitted,

By: /s/ *Amy Mason Saharia*
LISA S. BLATT
DAVID M. ZINN
AMY MASON SAHARIA
   *Counsel of Record*
PATRICK J. LOOBY
ALLISON S. EISEN
KAITLIN D. WETZ
WILLIAMS & CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *(202) 434-5000*
   *asaharia@wc.com*

DANIEL J. COLLINS
KATTEN MUCHIN ROSENMAN LLP
   *525 West Monroe Street*
   *Chicago, Illinois 60661*
   *(312) 902-5434*
   *Daniel.Collins@Katten.com*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

I, Amy Mason Saharia, counsel for Defendant-Appellant and a member of the Bar of this Court, certify that:

1. This brief complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2,581 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) and 7th Cir. R. 32(b) because it was prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT, size 14.

3. I further certify, pursuant to Circuit Rule 28(A)(h)(2), that this document and the attached appendices have been scanned for viruses and are virus-free.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                /s/ *Amy Mason Saharia*
                AMY MASON SAHARIA